## Dolan v. Dolan

*William G. Williams*, for plaintiff.

*Lee C. Swartz*, for defendant.

SHELLEY, J., January 24, 1966.—This matter comes before the court on defendant's exceptions to a master's

report recommending that a decree in divorce be entered on the ground of adultery committed by defendant.

Plaintiff filed a complaint in divorce, alleging as a ground indignities to the person. Later, the complaint was amended by deleting therefrom the charge of indignities to the person and inserting a charge of adultery. At the hearing, the corespondent testified that he had carried on an affair with defendant from the end of 1957 through part of 1962, during which period of time he had sexual relations with defendant "hundreds of times".

The exceptions raise two questions: (1) Should a divorce on the ground of adultery be refused when the only evidence of adultery presented is the testimony of the corespondent, and (2) is defendant's testimony worthy of belief and more credible than that of the corespondent?

Defendant contends that the testimony of the corespondent is inadmissible, and cites the cases of Matchin v. Matchin, 6 Pa. 332 (1847), and Wells v. Wells, 26 Dauph. 346 (1923). Defendant completely misinterprets the rule in the Matchin and Wells cases.

In the Matchin case, Chief Justice Gibson, speaking for the court, said on page 338: ". . . the confession of her accomplice, which, not having been communicated to her, and confirmed by her, was not evidence to affect her. . . ." The corespondent admitted to several individuals that he had had relations with defendant. At the trial of the case, the corespondent did not testify, and the only testimony that was offered was that of the individuals to whom the corespondent had made the admissions. Obviously, this testimony of statements made outside the presence of defendant was hearsay.

In the Wells case, Judge Fox, speaking for this court, said: ". . . the confession of her accomplice, it not having been communicated to her and confirmed by

her was not evidence to affect her". A reading of the record in the Wells case discloses that the husband-plaintiff suspected his wife of adultery with a certain individual, contacted that individual and arranged to meet him. Prior to the meeting, plaintiff had secreted a witness on the site of the meeting. At the meeting, the suspected corespondent admitted that he had had sexual relations with defendant. At the hearing, the alleged corespondent was not called and did not testify. The testimony as to his admission and his confession was offered by the husband-plaintiff and the employe who had been hidden nearby at the time of the confession.

In the instant case, the corespondent testified as to adulterous conduct between himself and defendant. Defendant testified, and her testimony corroborated that given by the corespondent in many respects. As a matter of fact, defendant admitted everything stated by plaintiff and the corespondent except the actual sexual intercourse, which she denied. Defendant, referring to the corespondent, said on one occasion: "So he always thought I was going to get a divorce so I could marry him, which I had no intentions of". Defendant denied that in a meeting with the corespondent and her husband, she stated she would leave her husband to go with the corespondent. However, she did testify, on crossexamination, that at the meeting she stated if the corespondent did not want her, she "would take up with a Mr. Wikowski".

Defendant also testified that when the corespondent "came around I was always glad to have someone to talk to". She testified that the corespondent visited her at her home when plaintiff was not present "during afternoons" and "at night", and that these visits occurred about "once a week or more often".

She admitted that on at least two occasions, she wrote letters to the corespondent, which letters, inci-

dentally, were offered in evidence, wherein she called the corespondent "darling" and declared her love for him and said that she could not live any longer without him.

On an occasion, defendant testified that she was sleeping on the couch attired in her pajamas, and the corespondent came into the house about 2:45 a.m., that she went upstairs and closed the door of the room in which her husband was sleeping and, upon hearing her husband moving around upstairs, she locked the door at the foot of the stairs. This corroborates the testimony given by the corespondent, that while the husband was breaking through the door, the corespondent grabbed his clothes and ran out of the door by the time plaintiff had pushed through the door.

Defendant testified that on another occasion while the corespondent was visiting her, they heard plaintiff coming up the walk, and the corespondent thereupon ran upstairs and hid in the attic.

She also admitted kissing the corespondent. There was also testimony to the effect that defendant and the corespondent had worked out signals so that the corespondent would know when plaintiff was away from home.

The rule as to the effect of the testimony of the corespondent is that a divorce should not be granted upon the uncorroborated testimony of a corespondent. The Pennsylvania Superior Court, in DiFabio v. DiFabio, 200 Pa. Superior Ct. 381 (1963), speaking through Judge Watkins, clearly states the rule to be that ". . . the testimony of a corespondent, standing alone, may be looked upon with suspicion, raise serious doubts as to credibility and point to possible collusion with the husband".

It is likewise the rule in Pennsylvania that a confession of adultery, unless corroborated by other evidence, will not justify a divorce on the ground of

adultery: Shoemaker v. Shoemaker, 199 Pa. Superior Ct. 61 (1962).

A careful reading of the entire record is sufficient, in our opinion, to support a divorce on the ground of adultery. It has been the rule in Pennsylvania for over 100 years that it is not necessary to prove the direct fact of adultery; for, being committed in secret, it is seldom susceptible of proof except by circumstances which, however, are sufficient whenever they would lead the guarded discretion of a reasonable and just man to a conclusion of guilt: Matchin v. Matchin, supra, page 338; Shoemaker v. Shoemaker, supra, page 69.

Accordingly, we conclude that the exceptions filed to the master's report must be overruled, and make the following

ORDER

And now, January 24, 1966, the report of the master is approved, and a decree on the ground of adultery will be signed upon payment of costs.